# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

SUMMIT REFRIGERATION GROUP INC.,          Case No. 05-Cr-151
MICHAEL P. CONTI,
FREDERICK P. ANDERSON and
RICHARD DEGROOT,

      Defendants.

## RECOMMENDATIONS TO THE HONORABLE RUDOLPH T. RANDA AND ORDERS

### NATURE OF THE CASE

On June 14, 2005, a federal grand jury sitting in this district returned a five-count indictment against the defendants, charging them with various violations of 18 U.S.C. §1832. The charges stem from the defendants' alleged conduct involving documents, computer files and information taken or copied from the individual defendants' former employer, Dual Temp Wisconsin, Inc. (DTW). The indictment also contains forfeiture allegations.

The defendants appeared before United States Magistrate Judge William E. Callahan for arraignment and entered pleas of not guilty to the charges. Pursuant to the pretrial scheduling order, the defendants have filed numerous motions.

Defendant Summit Refrigeration Group, Inc. filed the following motions: 1) for a bill of particulars (Docket #31); 2) to suppress the overbroad search warrant and seizures unreasonably exceeding the scope of the warrant (Docket #32); 3) to dismiss the indictment:

no trade secrets (Docket #36); 4) to dismiss duplicitous and multiplicitous indictment (Docket #40); 5) to dismiss the indictment because it is unconstitutionally vague, overbroad and ambiguous (Docket #45); and 6) to suppress physical evidence (Docket #50).

Defendant Michael P. Conti filed the following motions: 1) to suppress the overbroad search warrant and seizures unreasonably exceeding the scope of the warrant (Docket #28, #33[1]); 2) for a bill of particulars (Docket #30); 3) to dismiss the indictment: no trade secrets (Docket #37); 4) to dismiss the duplicitous and multiplicitous indictment (Docket #41); 5) to dismiss the indictment because it is unconstitutionally vague, overbroad and ambiguous (Docket #46); and 6) to suppress physical evidence (Docket #51).

Defendant Frederick P. Anderson filed these motions: 1) for a bill of particulars (Docket #34); 2) to suppress the overbroad search warrant and seizures unreasonably exceeding the scope of the warrant (Docket #35); 3) to dismiss the indictment: no trade secrets (Docket #38); 4) to dismiss the duplicitous and multiplicitous indictment (Docket #42); 5) to dismiss the indictment because it is unconstitutionally vague, overbroad and ambiguous (Docket #47); 6) to suppress physical evidence (Docket #52); and 7) to dismiss the indictment on constitutional grounds. (Docket #56).

Defendant Richard Degroot filled the following motions: 1) to suppress the overbroad search warrant and seizures unreasonably exceeding the scope of the warrant (Docket #27); 2) for a bill of particulars (Docket #29); 3) to dismiss indictment: no trade secrets (Docket #39); 4) to dismiss the duplicitious and multiplicitous indictment (Docket #43); 5) to dismiss the

---

[1]The defendant, Michael Conti, apparently filed duplicate copies of the same motion and exhibits.

indictment because it is unconstitutionally vague, overbroad and ambiguous (Docket #48); and 6) to suppress physical evidence (Docket #53).

The defendants' respective motions are basically identical and they have filed joint memoranda in support of their motions. The government opposes the defendants' motions. The defendants' motions to suppress physical evidence; motions to suppress: overbroad search; motions to dismiss the indictment: no trade secrets; motions to dismiss the indictment because it is unconstitutionally vague, overbroad and ambiguous; and motion to dismiss the indictment on constitutional grounds will be addressed herein. The defendants' motions for bills of particulars were denied by this court in its order filed May 31, 2006. The defendants' motions to dismiss duplicitous and multiplicitous indictment will be addressed in a separate recommendation.

## MOTIONS TO SUPPRESS PHYSICAL EVIDENCE

All defendants have filed a motion to suppress physical evidence seized as a result of a search of the offices of Summit Refrigeration on April 13, 2004, including all leads and evidence derived from the allegedly unlawful search, such as evidence seized from the home of defendant DeGroot. The defendants assert that the search warrant was not supported by probable cause and that the judicial officer breached his duty in reviewing the warrant.

The defendants assert that because the affidavit in support of the search warrant "fails to establish the reliability of the information provided by Steven Weinstein and others, the hearsay and double hearsay information relied upon in the Affidavit fails to establish probable cause for the Search Warrant." (Defendants' Memorandum in Support of Motions to Suppress Physical Evidence [Defendants' Memorandum Re: Suppression] at 3). The defendants further assert that the affidavit does not establish probable cause to believe that evidence of employee

-3-

theft, such as money or negotiable instruments under Wis. Stats. § 943.20(1)(b), would be fund at Summit's offices. Finally, they assert that the reviewing judicial officer "failed to notice that the Affidavit on its face provided absolutely no support that evidence of the crime of employee theft under § 973.70(1)(b) would be found at Summit's offices." (Defendants' Memorandum Re: Suppression at 3).

In opposing the motion, the government asserts that the information provided by Dual Temp's President and Chief Executive Officer Steven Weinstein to Detective Ronald LaGosh of the Brookfield Police Department establishes probable cause to believe the defendants stole the listed items from DTW. The government points out that hearsay may be used in search warrants and that when an affidavit relies on hearsay, the court should inquire into the 'basis of knowledge' and 'veracity' of persons supplying the hearsay information. The government concedes that the crime described in the search warrant is a theft under Wis. Stat. § 943.20(1)(a), not a theft under Wis. Stat. §943.20.(1)(b), as stated. However, the government maintains that the incorrect citation is merely a technical error that does not warrant suppression of the evidence. Finally, the government asserts that the officers executing the search warrant relied in good faith on a facially valid warrant.

Before addressing the parties' contentions, the court notes that they intermingle arguments with respect to the defendants' motion to suppress physical evidence and their motion to suppress the overbroad search warrant and seizures. To the extent possible, the court will address the parties' arguments as they relate to the particular motion.

A search warrant may issue only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or thins go be seized. U.S. Const. amend. IV. Finding these words to be "precise" and "clear," the

-4-

Supreme Court has interpreted them to encompass only three requirements: 1) warrants "must be issued by neutral, disinterested magistrates"; 2) those seeking a warrant must show probable cause "to believe that the evidence sought will aid in a particular apprehension or conviction" for a particular offense; and 3) the warrants must describe with particularity the "'things to be seized,' as well as the place to be searched." Dalia v. United States. 441 U.S. 238, 255 (1979) (internal citations omitted)

It is well-established that probable cause exists when it is reasonably believed that the evidence sought will aid in the prosecution of a particular offense and the evidence is located in the place to be searched. See United States v. Lloyd, 71 F.3d 1256, 1263 (7th Cir. 1995); United States v. Ellery, 678 F.2d 674, 677 (7th Cir. 1982); United States v. Anton, 633 F.2d 1252, 1254 (7th Cir. 1980). "Probable cause denotes more than mere suspicion, but does not require certainty." United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990) (quoting United States v. Ellery, 678 F.2d 674, 677 [7th Cir. 1982]). "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act." United States v. Kimberlin, 805 F.2d 210, 228 (7th Cir. 1986) (citing Brinegar v. United States, 338 U.S. 160, 175 [1949]). Probable cause is a fluid concept, Illinois v. Gates, 462 U.S. 213, 232 (1983), a flexible, practical, nontechnical conception. Brinegar v. United States, 338 U.S. 160, 175 (1949). Moreover, a judicial preference is to be accorded warrants in those cases where there is a close or marginal showing of probable cause.

In reviewing prior probable cause findings made by a judge in issuing a warrant, "great deference is to be accorded to that determination." United States v. Leon, 468 U.S. 897, 914 (1984); United States v. Ventresca, 380 U.S. 102, 109 (1965). The duty of the reviewing court

-5-

is simply to insure that the judge issuing the warrant had a "substantial basis" for concluding that, "under the totality of the circumstances", probable cause existed to believe the contraband or evidence of the crime sought will be found in a particular place. <u>Illinois v. Gates</u>, 462 U.S. at 230-36.

A search warrant may issue "even in the absence of '[d]irect evidence linking criminal objects to a particular site.'" <u>United States v. Sleet</u>, 54 F.3d 303, 306 (7th Cir. 1995) (quoting <u>United States v. Lamon</u>, 930 F.2d 1183, 1188 [7th Cir. 1991]); <u>see also</u>, <u>United States v. Malin</u>, 908 F.2d 163, 165 (7th Cir. 1990). A judge making a probable cause determination "need not determine that the evidence sought is <u>in</u> <u>fact</u> on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place . . .. He need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." <u>Malin</u>, 908 F.2d at 166 (emphasis in original) (quoting <u>United States v. Peacock</u>, 761 F.2d 1313, 1315 [9th Cir. 1985]); <u>see also</u>, <u>Sleet</u>, 54 F.3d at 306; <u>Lamon</u>, 930 F.2d at 1188. Thus, an issuing court is entitled to draw inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. <u>See</u> <u>Lamon</u>, 930 F.2d at 1188. "Rather than viewing bits and pieces of a probable cause showing in isolation, the court must focus on all the facts presented to the magistrate." <u>United States v. Markling</u>, 7 F.3d 1309, 1317 (7th Cir. 1993).

In this case, the affidavit in support of the search warrant shows that the affiant, Detective LaGosh, was contacted by President and CEO of Dual Temp, Steven Weinstein, who advised him that four employees who had just resigned from his company had removed operation and maintenance manuals, company pending bid files and had copied company files into other computer drives which were removed from the premises. He identified the four

-6-

employees as defendants Conti, Anderson, DeGroot and Victoria Scherer. (Affidavit of Detective Ronald LaGosh in Support of the Search Warrant [LaGosh Aff.] ¶ 2). He advised Detective LaGosh that defendants Conti, Anderson and DeGroot had offered to purchase his Wisconsin branch on March 4, 2004, and that after he stated that he needed to review the offer, they told him that if he did not accept the offer, they would resign. Id.

Mr. Weinstein told Detective LaGosh that the three individuals resigned. He further stated that prior to leaving, he was advised that the defendants and Ms. Scherer "were observed copying company files and company computer hardware." Id. Ms. Scherer had a computer set up by her computer and was copying company files onto it. Mr. Weinstein also stated that Glen Schrot, an engineer with Dual Temp, observed the four individuals copying numerous documents after normal business hours.

According to Mr. Weinstein, he immediately had his company in Brookfield search for missing items and learned that it was missing numerous operation and maintenance manuals for completed projects, [which were included with the affidavit as Exhibit A], file folders for Budget and Pending Quotes [which were included with the affidavit as Exhibit B], a Sony handheld 16MB PDA, a JJ Keller Regulatory Guide, two JJ Keller OSHA Compliance Manuals and one Dual Temp Employee Compliance Manual. Id. ¶ 3. Mr. Weinstein said he also checked his company computers. He stated that they had numerous files and information deleted from them. Id.

Detective LaGosh conducted an investigation to verify the existence of Summit Refrigeration Group. Id. ¶ 2. He also drove by the building housing Summit, verified the address and took a photograph of it. Id. ¶ 4.

The affidavit in support of the search warrant is based primarily on information provided by Mr. Weinstein. Some of the information presented is based on his own personal knowledge and actions and other information is based on observations and statements made by company employees.

It is well-settled that hearsay may be used to establish probable cause in a search warrant. United States v. Pless, 982 F.2d 1118, 1125 (7th Cir. 1992) (citing Rule 41[c][1] and Franks v. Delaware, 438 U.S. 154, 165 [1978]) ("[P]robable cause may be founded on hearsay."); see also, United States v. Spach, 518 F.2d 866, 869 (7th Cir. 1975). However, in determining whether hearsay evidence establishes probable cause, the court should inquire into the "'basis of knowledge' and 'veracity' of persons supplying hearsay information." Pless, 982 F.2d at 1125 (citing Illinois v. Gates, 462 U.S. at 238-39).

The defendants acknowledge that hearsay is permissible, but contend that there is no indicia of reliability of the information, nor corroboration by the affiant. They further state that the affidavit fails to show the Mr. Weinstein is credible and, to the contrary, they assert that Mr. Weinstein had a clear motive to provide false information.

In discussing the reliability of informants, courts have acknowledge that "a citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal activity themselves." (quoting United States v. Towns, 913 F.2d 434, 441 [7th Cir. 1990]). In Illinois v. Gates, the Court stated that "if an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny of the basis of his knowledge unnecessary." 462 U.S. at 233-34. Information in a search warrant provided by a businessman regarding his

-8-

business where there is no showing of any possible motive to fabricate is inherently reliable. Spach, 518 F.2d at 871; see also, United States v. Wilson, 479 F.2d 936 (7th Cir. 1973).

Reports by victims of crimes ordinarily establish probable cause. Hebron v. Touhy, 18 F.3d 421, 422 (7th Cir. 1994) (citing Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 439 [7th Cir. 1986]). Nonetheless, sometimes information from a victim of a crime should lead a reasonable officer to be suspicious and make further investigation prudent. Touhy 18 F.3d at 422-23.

Here, the defendants contend that the affidavit fails to establish how Mr. Weinstein learned that the three individual defendants and Ms. Scherer copied company files and computer hardware prior to leaving Dual Temp. They also question how the observer knew the individuals were copying company computer information. The defendants further assert that the affidavit does not indicate who searched DTW's Wisconsin office and how Mr. Weinstein learned files were missing. They cite other concerns with the affidavit and argue that nothing links the alleged missing files to Summit's offices. The defendants also contend that Mr. Weinstein had a motive to lie to Detective LaGosh because he wanted revenge and wanted to crush competition from the defendants' competing company.

As President and CEO of Dual Temp, Mr Weinstein reported the theft of items from his business. He personally verified that numerous files and information had been deleted from company computers. He also relied on information provided by his employees regarding the copying of numerous documents after hours by the defendants and Ms. Scherer. Ms. Scherer also was seen copying company files onto a computer she had set up by her work computer. Hearsay evidence may establish probable cause for the issuance of a search warrant. Franks, 438 U.S. at 165; Pless, 982 F.2d at 1125.

-9-

While the affidavit does not specify what specific documents were copied, given the circumstances – after hours copying of documents onto another computer – a reasonable inference is that the individuals did not want it known that they surreptitiously were copying or taking company documents and files. Numerous files and documents were missing from the company's computers. The three individual defendants resigned from DTW and Detective LaGosh verified that Summit Refrigeration was in operation as Mr. Weinstein had stated.

Although the defendants assert that Mr. Weinstein had a motive to lie, they rely on mere speculation to support this assertion. The specificity of the information he provided, including the name of the employee who observed the four individuals staying late after normal business hours copying numerous documents, supports the reliability of that information. As president of the company, Mr. Weinstein reasonably could rely on his employees as a basis for his knowledge about events at his company.

Mr. Weinstein was a victim of a crime and, other than the defendants' conjecture, there is no indication that he fabricated the information provided to Detective LaGosh. Moreover, if Mr. Weinstein would have fabricated the report of the activity by the defendants, he would have been subjected to criminal liability. Under these circumstances, the Court has stated that "rigorous scrutiny" of the basis of knowledge of an honest citizen's report of criminal activity is unnecessary. Illinois v. Gates, 462 U.S. at 233-34. Thus, the court concludes that the information provided to Detective LaGosh by Mr. Weinstein, including hearsay information, was reliable and credible.

However, the defendants maintain that the affidavit fails to establish probable cause that evidence of "employee theft" in violation of Wis. Stat. §943.20(1)(b) would be found at Summit's offices. The defendants cite no authority to support this contention. As noted, the

-10-

government concedes that the search warrant cites an incorrect statute and that the correct statutory citation is Wis. Stat. §943.20(1)(a).

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Rule 41 of the Federal Rules of Criminal Procedure sets out the procedure and requirements for search warrants. Rule 41(e)(2), which describes the contents of the warrant, provides:

> **(2) Contents of the Warrant.** The warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:
>
> **(A)** execute the warrant within a specified time no longer than 10 days;
>
> **(B)** execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and
>
> **(C)** return the warrant to the magistrate judge designated in the warrant.

Neither the Fourth Amendment nor Rule 41 require that a search warrant contain the statutory citation of the violation. The defendants have not cited any case requiring that a search warrant, to be valid, contain such statutory citation. Even if the omission of the statutory citation could be construed as a technical violation, it is well-settled that "technical defects in a warrant do not call for or permit exclusion of what the search produces." United States v. Hornick, 815 F.2d 1156, 1158 (7th Cir. 1987) (citing United States v. Leon, 468 U.S. 897 [1984]). In light of the foregoing, the court concludes that the search warrant was supported by probable cause.

-11-

The defendants also assert that the judge issuing the search warrant acted as a "rubber stamp" for the police because he failed to clearly read the affidavit and discover the citation error. Thus, they contend that the judge issuing the warrant was not a "neutral and detached" judicial officer as required. They further maintain that because no reasonable officer could rely on the warrant which "authorized a search for employee theft with no evidence that a crime had been committed," the good faith exception articulated in United States v. Leon, 468 U.S. 897 (1984), is not applicable.

Here, as noted, a search warrant is not required to include a statutory citation, but merely must show probable cause of a "crime" being committed. See Fed. R. Crim. P. 41. The fact that the judge issuing the warrant failed to realize that the statutory citation was incorrect, does not require suppression of the evidence. Thus, under the circumstances, the court concludes that the defendants' contention that the judge issuing the warrant was merely a "rubber stamp" for the government is without merit.

Even if the court were to conclude that the search warrant is not supported by probable cause, the evidence is not subject to suppression. It is well-established that if evidence is obtained in violation of the Fourth Amendment, the exclusionary rule precludes its use against the victims of the illegal search and seizure. Mapp v. Ohio, 367 U.S. 643 (1961); Weeks v. United States, 232 U.S. 383 (1914). However, in Leon, 468 U.S. at 926, the Supreme Court held that the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant, if the officers conducting the search acted in objectively reasonable reliance on the search warrant and it was issued by a detached and neutral magistrate judge. See also, Massachusetts v. Sheppard, 468 U.S. 981 (1984). "The exclusionary rule was adopted to deter unlawful searches by police not to punish the errors of magistrates and

-12-

judges." <u>Sheppard</u>, 468 U.S. at 990-91 (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 263 [1983]) (White, J. concurring in judgment).

Application of the good faith exception to the exclusionary rule under <u>Sheppard</u> is appropriate in this case because Detective LaGosh executed the search warrant with the understanding it authorized him to search for the items described in the application and supporting affidavit. Suppression of the evidence would not further the purposes of the exclusionary rule. <u>See</u> <u>Id.</u> This court finds that the officers executing the search warrant acted in good faith because their reliance upon the warrant issued by the detached and neutral judge was objectively reasonable.

In sum, based on the totality of circumstances and for the reasons stated herein, the court concludes that the search warrant was supported by probable cause and was properly issued by a neutral and detached judicial officer. Accordingly, this court will recommend that the defendants' motion to suppress physical evidence on the grounds stated be denied.[2]

## MOTIONS TO SUPPRESS: OVERBROAD SEARCH WARRANT AND SEIZURES UNREASONABLY EXCEEDING THE SCOPE OF THE WARRANT

All defendants have moved to suppress all physical items, information and leads resulting from the search of Summit Refrigeration on the grounds that the search warrant was overbroad and items were seized which unreasonably exceeded the scope of the warrant. The defendants assert some of the same arguments that they raised in their motion to suppress physical evidence. They request an evidentiary hearing "to identify the items seized outside the scope of the warrant and to determine whether the government can establish the

---

[2]In their motion asserting the search warrant is overbroad, the defendants assert that the search warrant fails to meet the particularity requirement mandated by the Fourth Amendment.

applicability of plain view to those items" and to address "the government's good faith." Defendants' Reply Memorandum in Support of Motions to Suppress Search [Defendants' Reply Memorandum Re: Suppression] at 18). To the extent the defendants' contentions have already been addressed, such as whether the warrant was supported by probable cause, they will not be repeated herein.

As noted, the Fourth Amendment provides that a warrant must be based on probable cause and particularly describe the place to be searched and the things to be seized. The defendants maintain that the lack of particularity in the warrant and inventory sheets requires an evidentiary hearing to determine whether the search and seizure was unconstitutionally overbroad. As an alternative, the defendants seek exclusion of all items seized that were outside the actual or reasonable scope of the search warrant. Specifically, the defendants challenge the warrant authorization to seize and search items, such as modems, monitors, printers and printed material providing instructions or examples concerning the operation of a computer system. They also state that the warrant placed no limitations on the types of computer data that the police were permitted to search. They contend that the warrant is defective "because it failed to confine the officers' search of the computers to items stolen (not copied) from DTW and provided the officers with no guidance as to how to limit their search of computer data to DTW information." (Defendants' Reply Memorandum Re: Suppression] at 8).

The government opposes the defendants' motions, asserting that no evidentiary hearing is necessary because the defendants have failed to meet their burden of alleging facts sufficient to justify such a hearing. The government contends that the search warrant is sufficiently particular given the circumstances of the defendants' theft and that it authorized not

-14-

only the seizure of specified property, but the seizure of evidence "used in the commission of" the crime. In addition, the government states that the warrant met the particularity requirement because it stated that items to be seized had to be "specifically 'connected to Dual Temp of Wisconsin.'" (Government's Response to Defendants Pretrial Motions at 34). As to items seized outside the scope of the warrant, the government states that they were seized pursuant to the plain view doctrine. In addition, the government maintains that the court can decide the defendants' motion based on the warrant and supporting affidavit.

The affidavit in support of the search warrant in this case established that four employees of DTW – the three individual defendants and Ms. Scherer – were "observed copying documents company files and company computer hardware." (LaGosh Aff. ¶ 2). They were doing such work after normal business hours and were also observed copying computer files onto another computer set up for that purpose. Id. Mr. Weinstein personally checked the computers, as did at least one other employee at his direction. Such check revealed that files and information had been deleted from the company's computers. Other documents were also discovered to be missing. The defendants and Ms. Scherer resigned from the company.

In addressing the defendants' motion to suppress physical evidence, the court found that the search warrant was supported by probable cause. Such determination included probable cause for the search of computers and computer-related hardware. Although the defendants present additional arguments asserting the lack of probable cause in the warrant, the court finds their arguments unpersuasive. As the court has concluded in its recommendation on the defendants' motion to suppress evidence, the affidavit provided probable cause for the search of the items listed. The fact that the affidavit did not state "what was done with the alleged copies that were made" or that it fails to specify what computer data may have been copied

-15-

does not negate the probable cause finding. Probable cause does not require certainty. McNeese, 901 F.2d at 592. A judge issuing a warrant merely must have a "substantial basis" for concluding that, "under the totality of circumstances," there is probable cause to believe that contraband or evidence of the crime sought will be found in a particular place. Illinois v. Gates, 462 U.S. at 230-36. Here, the reviewing judge had a "substantial basis" for concluding that probable cause existed for the computer and computer-related items, as well as the other items not challenged by the defendants.

The defendants also raise a particularity challenge to the warrant. Under the Fourth Amendment, search warrants are required to describe with particularity the things to be seized. Leon, 468 U.S. at 923. This particularity requirement protects persons against the government's indiscriminate rummaging through their property. Id.; see also, Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). "[A]lthough the fourth amendment requires that a search warrant describe the objects of the search with reasonable specificity, it need not be elaborately detailed." United States v. Jones, 54 F.3d 1285, 1290 (7th Cir. 1995) (quoting United States v. Somers, 950 F.2d 1279, 1285 [7th Cir. 1991]). The warrant need not enable authorities "to minutely identify each item for which they are searching." United States v. Shoffner, 826 F.2d 619, 630-31 (7th Cir. 1987) (quoting United States v. Prewitt, 553 F.2d 1082, 1086 [7th Cir.1977]).

A description in a warrant is valid "if it is as specific as the circumstances and the nature of the activity under investigation permit." Shoffner, 826 F.2d at 630-31 (quoting United States v. Blum, 753 F.2d 999, 1001 [11th Cir. 1985] [citing United States v. Wuagneux, 683 F.2d 1343, 1349 [11th Cir. 1982]). How detailed the warrant must be follows directly from the nature of the items there is probable cause to seize — detail is necessary only to the extent the

-16-

judicial officer must limit the search and seizure to those items. <u>United States v. Bentley</u>, 825 F.2d 1104, 1110 (7th Cir. 1987). "The level of specificity must be such . . . that the officers executing the warrant are 'able to identify the things to be seized with reasonable certainty.'" <u>Sleet</u>, 54 F.3d at 307 n. 1 (quoting <u>United States v. Spears</u>, 965 F.2d 262, 277 [7th Cir. 1992]).

The defendants do not contend that the entire warrant lacks particularity. <u>See</u> Defendants' Reply Memorandum Re: Suppression at 6. Rather, they contend that the following part of the warrant lacks sufficient particularity to comply with the requirements of the Fourth Amendment:

> . . . back-up CD's of DualTemp documents; any and all information and or data stored in the form of magnetic or electronic coding on computer media or upon media capable of being read by computer or with the aid of computers; related equipment, including but not limited to floppy disks, fixed hard disks, removable hard disk cartridges, tapes and laser disks, video cassettes and any other media which is capable of storing magnetic coding including data storage in the form of electronic e-mail from Michael P. Conti, Fred P. Anderson, Richard J. DeGroot, or Victoria Scherer; any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic magnetic computer impulses for data, including but not limited to computers, computer components, word processing equipment, modems, monitors, printers, plotters, encryptions, circuit boards, optical scanners, external hard drives and other computer-related electronic devices; and any and all written or printed material, which provides instructions or examples concerning the operation of a computer system; computer software, and/or related devices; handbooks or other notations connected to DualTemp of Wisconsin, Inc.;

(Search Warrant issued April 13, 2004, at 1-2).

The defendants assert the above-cited portion of the warrant is overbroad and allows officers to seize all computer-related items without limitation. In response, the government contend that the phrase, "connected to Dual Temp of Wisconsin, Inc.," modifies the computer-related items and limits the search.

-17-

The defendants have raised a significant issue with respect to the search warrant. Contrary to the government's contentions, a plain reading of the wording and a review of the punctuation in the paragraph listing the items to be seized shows that the phrase, "connected to Dual Temp of Wisconsin, Inc.," only modifies the last item, namely "handbooks or other notations." However, in light of the limiting phrase, the court is not prepared at this juncture to conclude that this part of the warrant authorizes a general search. Given the government's construction of the items to be seized pursuant to the warrant, the officers who conducted the search may have construed the warrant in the same manner.

As noted, the defendants have requested an evidentiary hearing. Evidentiary hearings on motions to suppress are not granted as a matter of course and there is no obligation to hold such a hearing merely upon the defendant's request. United States v. Harris, 914 F.2d 927, 933 (7th Cir. 1990). "Rather, the defendant must demonstrate that a 'significant, disputed factual issue' exists such that a hearing is required." Id. (quoting United States v. Sophie, 900 F.2d 1064 [7th Cir. 1990]); see also, United States v. Hamm, 786 F.2d 804, 807 (7th Cir. 1986).

Under the circumstances, the court will hold an evidentiary hearing on how the search for computer-related items was conducted. The government will need to present evidence establishing how the officers executing the search warrant conducted the search, what efforts, if any, the officers made to identify relevant files and information, what items were seized and why they were seized. However, the defendants' request for an evidentiary hearing on the issue of the government's "good faith" will be denied. The defendants have failed to establish grounds for a hearing on this issue.

The government asserts that some of the items seized were in plain view. The evidentiary hearing will also address this issue. The plain view doctrine allows a police officer

-18-

to conduct warrantless seizures of private possessions when: 1) the officer has not violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; 2) the incriminating character of the evidence is "immediately apparent"; and 3) the officer has a lawful right of access to the object itself. <u>Horton v. California</u>, 496 U.S. 128, 142 (1990); <u>United States v. Willis</u>, 37 F.3d 313, 316 (7th Cir. 1994). The government has the burden of proving the legality of evidence not seized pursuant to a search warrant. <u>United States v. Longmire</u>, 761 F.2d 411, 417 (7th Cir. 1985).

At the hearing, the government will have to provide information about what documents and other items were seized under the plain view doctrine, from where they were seized, and whether the incriminating nature of the items was "immediately apparent." The court can then make a determination as the applicability or not of the plain view doctrine with respect to the items and documents.

In sum, the court will reserved issuing a recommendation on the defendants' motion to suppress the allegedly overbroad search pending an evidentiary hearing as set forth herein. The hearing will be conducted on Friday, September 8, 2006, at 10:30 a.m. The parties will be advised of the courtroom for the hearing at a later date.

## MOTIONS TO DISMISS INDICTMENT: NO TRADE SECRETS

All defendants have moved the court to dismiss the indictment because the items at issue do not constitute trade secrets under 18 U.S.C. § 1839. The motions were made pursuant to Fed. R. Crim. P. 7(c)(1) and 12(b) and the Fifth and Sixth Amendments to the United States Constitution. The defendants filed a joint brief in support of their separate motions to dismiss the indictment.

-19-

The defendants assert that the items alleged to be trade secrets are not trade secrets under 18 U.S.C. § 1839 because Dual Temp Wisconsin, Inc. (DTW) did not take reasonable measures to keep any of the information secret and the information is either generally known or readily ascertainable through proper means by DTW's competitors. The defendants assert that the court may grant a pretrial motion to dismiss the indictment, citing United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988). The defendants further assert that they are asking the court to assess the facts, undisputed for the purposes of this motion, and "make a legal determination that convictions o the charged offenses cannot lie on those facts." (Defendants' Memorandum in Support of Motion to Dismiss Indictment: No Trade Secrets at 8).

The indictment alleges as follows: Summit Refrigeration Group, Inc. (Summit) and DTW are competitors in the industrial refrigeration industry. Both companies design, install, and maintain large industrial refrigeration systems, mainly for companies in the food industry. (Indictment, Count 1 ¶ 2). DTW is a subsidiary of Dual Temp of Illinois, Inc. (Dual Temp), an Illinois corporation headquartered in Chicago. Id. ¶ 2(a). Summit, located in Menomonee Falls, is owned and operated by defendants Conti, Anderson and DeGroot, along with two financial investors. Id. ¶ 2(c). Defendants Conti, Anderson, and DeGroot are former employees of DTW. Id. ¶ 2(b). They left DTW on March 2, 2004, and began operating Summit a few days later. Id. ¶ 2(d).

The indictment alleges that prior to leaving DTW, Summit copied numerous records from DTW's computer system, including DTW proposals and quotes for possible projects. (Indictment, Overt Act ¶ 5). The indictment also alleges that on December 17, 2003, defendant Conti asked an information technology specialist from Dual Temp's Chicago office to provide him with electronic as-built files burned onto disks for more than 80 jobs which Dual Temp or

-20-

DTW had performed for over 30 customer companies.  Id. ¶ 1.  As-built files are construction drawings of installed projects which include changes from original drawings, if changes were made during installation.  Id.  In February, 2004, defendant Conti again asked an information technology specialist in Chicago to provide him with the electronic as-built files.  Id. ¶ 4.  In late December 2003 or early January 2004, defendant Conti directed a DTW employee to copy all of his computer files because he needed duplicates.  Id. ¶ 2.  The computer information included proposals, change orders, and information on projects defendant Conti had worked on for DTW.  Id.  On another occasion, defendant Conti directed a DTW employee to put together a budget of expenses normally incurred by DTW.  Id. ¶ 3.

Count 1 charges that all defendants conspired to commit trade secrets violations, contrary to 18 U.S.C. §1832(a)(5).  Count Two alleges that on or about March 2, 2004, all defendants, with intent to convert trade secrets to the benefit of someone other than the rightful owner and intending and knowing that the offense would injure the owner, knowingly stole and without authorization appropriated, took, and carried away the following trade secrets from DTW:

a. Computerized AUTO-CAD drawings of projects installed by DTW;

b. Approximately 60 operations and maintenance manuals compiled by DTW regarding systems DTW had installed, which contained safety information, repair histories, and confidential drawings specific to those systems;

c. Approximately 130 customer files regarding projects that DTW was bidding to be awarded which contained DTW bids, detailed descriptions of specifications and components which are part of the bids, and notes made by DTW regarding the projects;

d. Dual Temp's employee compliance manual which contained safety information developed over the years by Dual Temp; and

-21-

e. Paper drawings of numerous refrigeration systems previously installed for various customers by Dual Temp or DTW. Each drawing bore the warning, "This drawing is the intellectual property of Dual Temp Companies and it is not to be reproduced, copied in any format or manner whatsoever without first obtaining our express written permission and consent."

Count 3 charges all defendants with the unauthorized copying, duplication, downloading, and destruction of trade secret information belonging to DTW, with the intent to convert the trade secrets to the economic benefit of someone other than the rightful owner thereof knowing that the offense would injure the owner of the trade secrets. The alleged trade secrets are computerized AUTO-CAD drawings of projects installed by DTW.

Count 4 charges all defendants with knowingly possessing stolen trade secret information with the intent to convert the trade secrets to the economic benefit of someone other than the rightful owner knowing that the offense would injure the rightful owner in violation of 18 U.S.C. §§1832(a)(3) and (4) and 18 U.S.C. § 2. The trade secrets alleged involved are:

a. Numerous DTW Operations and Maintenance Manuals as described in overt act 6(b) in count one of this indictment;

b. Numerous DTW price quotes on various projects DTW was seeking to obtain which included details on exactly what DTW proposed to provide on each project;

c. Numerous paper DTW drawings of various systems DTW installed or sought to install for various customer bearing DTW's confidentiality warning as described in overt act 6(f) in count of this indictment;

d. Numerous DTW computerized AUTO-CAD drawings of various systems DTW had installed or sought to install, each bearing DTW's confidentiality warning;

e. Lists of DTW bids on various projects;

f. DTW personnel records including rates of pay;

g. DTW records on pricing and costs of various jobs; and

h. Eight CD-Roms containing computerized copies of DTW information including, but not limited to, quotes and proposals on pending and past projects, pay rates

-22-

for various employees, memos, maintenance agreements with customers, and as-built drawing files.

Count 5 charges a violation of the same statutes as Count 4 but only names defendants Summit and DeGroot. The trade secrets involved in Count 5 are cover pages for projects involving more than twenty customers and records on DTW's bases for bids on various projects, including items to be installed, labor rates, numbers of hours of labor, necessary material and equipment to be used, and confidential DTW drawings.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires an indictment be a plain, concise, and definite written statement of the essential facts constituting the offense charged. As long as the words of the statute involved clearly set forth all of the elements of the offense, it is generally sufficient that an indictment be stated in the words of the statute itself. Hamling v. United States, 418 U.S. 87 (1974). In order to be valid, an indictment must allege a defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating. United States v. Gimbel, 830 F.2d 621, 624 (7th Cir. 1987).

Rule 12(b)(2) provides that a defendant "may raise by pretrial motion any defense, objection or request that the court can determine without a trial of the general issue." At the pretrial stage of a case, "the indictment ordinarily should be tested solely by its sufficiency to charge an offense regardless of the strength or weakness of the government's case." Risk, 843 F.2d at 1061 (citing United States v. Sampson, 371 U.S. 75, 78-79 [1962]). Thus, although an indictment may be dismissed under Fed. R. Crim. P.12(b), "where there is an infirmity of law in the prosecution," it may not be dismissed "on a determination of facts that should have been developed at trial." United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987) (citing United States v. Korn, 557 F.2d 1089, 1090-91 [5th Cir. 1977]). Accordingly, a pretrial motion

-23-

to dismiss the indictment cannot be based on a sufficiency of the evidence argument (as opposed to a sufficiency of the indictment argument) because such an argument raises factual questions embraced in the general issue of guilt or innocence.  United States v. Ayarza-Garcia, 819 F.2d 1043, 1048 (11th Cir. 1987) (citing United States v. Mann, 517 F.2d 259, 266 [5th Cir. 1975]; United States v. King, 581 F.2d 800, 802 [10th Cir. 1978]).  "Rule 12 is not intended to authorize 'speaking motions' through which the truth of the allegations in an indictment are challenged."  Ayarza-Garcia, 819 F.2d at 1048 (citation omitted).  See also, Costello v. United States, 350 U.S. 359, 363 (1956) (an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charges on the merits).

In United States v. Glecier, 923 F.2d 496, 499 (7th Cir. 1991), the court summarized the standard for reviewing objections to the sufficiency of the indictment, stating:

> The fifth amendment, with exceptions not relevant here, limits the power of the federal government to hold someone to answer for a felony "unless on a presentment or indictment of a Grand Jury."  U.S. CONST. amend V.  The sixth amendment then grants to all persons accused by the federal government of a crime several basic rights, including the right "to be informed of the nature and cause of the accusation."  U.S. CONST. amend VI.  The courts have long held that these broad principles break down into three requirements (sometimes grouped as two requirements, see, e.g., Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)) for the sufficiency of an indictment:  "The defendant is entitled to an indictment that [1] states all of the elements of the offense charged, [2] informs him of the nature of the charge so that a defense can be prepared, and [3] enables the defendant to evaluate any possible double jeopardy problems presented by the charge."

(Citations omitted).  The court noted that, "'in reviewing the sufficiency of an indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner.'"  Glecier, 923 F.2d at 499 (quoting United States v. Gironda, 758 F.2d 1201, 1209 [7th Cir. 1985]).

-24-

In this case, the defendants do not assert that the indictment fails to state all of the elements of the offense charged, fails to inform them of the nature of the charges so they can prepare a defense or fails to enable them to evaluate any possible double jeopardy problems presented by the charges. Rather, they contend that the undisputed facts establish that the information and items the government claims are trade secrets are not trade secrets. Therefore, they maintain that the indictment must be dismissed.

The defendants assert that the information and items do not qualify as "trade secrets" because (1) the owner of the information did not take reasonable measures to keep the information secret; and/or (2) the information does not derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public. The defendants cite numerous civil cases to support their argument that various items listed in the indictment do not constitute "trade secrets."

The defendants cite to Risk, 843 F.2d at 1061, in support of their position that the indictment can be dismissed at this stage of the proceedings. In Risk, the defendant, who was an officer and bank manager, was charged with causing the bank to fail to file Currency Transaction Reports (CTR's) in violation of federal law, among other charges. 843 F.2d at 1060. The transactions individually involved did not exceed $10,000.00. Id. at 1060-61. The government acknowledged that the defendant accurately summarized the facts giving rise to the indictment. Id. at 1060. In dismissing the indictment, the district court found that the indictment was facially sufficient, but held that the statute under which the defendant was indicted did not apply to the facts of the case. Id. at 1061. Noting the "unusual circumstances of this case," the court explained that the district court did not, as the government maintained, dismiss the indictment because the government could not prove its case. Id. "Rather, the

-25-

district court found the allegations in the indictment insufficient to state a claim under the CTR statute." Id.

Here, on the other hand, despite their protestations to the contrary, the defendants are asking the court to assess the "strength or weakness of the government's case." See Id, at 1060. They are essentially asking this court to determine pretrial whether the government can establish that the items and information allegedly taken constitute "trade secrets." Whether they do or do not is a factual question that must be determined by the trier of fact, not by the court in a pretrial motion.

The indictment sufficiently states a claim under the statute. The indictment alleges that the information and items involved were trade secrets. Furthermore, it apprises the defendants of all the elements of the offenses charged, informs them of the nature of the charges so they can prepare a defense and enable them to plead the judgment as a bar to any later prosecution for the same offense. Gleicer, 923 F.2d at 499. Accordingly, the court will recommend that defendants' motions to dismiss the indictment because the items at issue allegedly do not constitute trade secrets under 18 U.S.C. § 1839 be denied.

## MOTIONS TO DISMISS UNCONSTITUTIONAL, VAGUE, OVERBROAD AND AMBIGUOUS INDICTMENT AND MOTION TO DISMISS ON CONSTITUTIONAL GROUNDS

Each of the defendants have filed identical motions to dismiss the indictment pursuant to Rules 12(b) and 7(c)(1) of the Federal Rules of Criminal Procedure and the First, Fifth and Sixth Amendments to the United States Constitution. (Docket #s 45, 46, 47 & 48). In a joint memorandum in support of their motions, the defendants assert that the indictment is unconstitutionally vague, overbroad, and ambiguous. Defendant Anderson also filed a motion to dismiss the indictment on constitutional grounds (Docket # 56), along with a supporting brief.

-26-

The brief was adopted by defendant DeGroot in support of his motion to dismiss the indictment because it is unconstitutionally vagueness, overbreadth, and ambiguity. The arguments made in both briefs are virtually the same and, therefore, the court will discuss them together.

The defendants assert that the definition of trade secrets as set forth in the Economic Espionage Act of 1996 (EEA), codified at 18 U.S.C. §§ 1831-39, is too vague, overbroad and ambiguous to have allowed the defendants to understand what was prohibited. Thus, the defendants maintain that the enforcement of the statute against them violates their due process rights under the Fifth Amendment and their right of association under the First Amendment. Specifically, the defendants assert that the statute's definition of trade secrets is replete with vague works and phrases that, as applied to them, are unconstitutionally vague. They contend that the lack of notice that their associational activities contravene the EEA violates their right of association pursuant to the First Amendment. The defendants also assert that the definition of trade secrets as applied to them is so broad and ambiguous that it could be read to include virtually any business information. Defendant Anderson (and as adopted by Defendant DeGroot) also asserts that the statute upsets the federal-state balance on trade secrets.

In asserting that the EEA as applied to them is unconstitutionally vague, the defendants focus on the definition of trade secret in 18 U.S.C. § 1839(3). Section 1839(3) defines a trade secret as various types of information that the owner (1) has taken "reasonable measures" to keep secret, (2) derives "independent economic value" (3) from not being "generally known" or (4) readily ascertainable" by (5) the public. The defendants assert that the "reasonable measures" language is unconstitutionally vague "because the ordinary person cannot possibly determine what is meant by the term, which is essentially standardless." (Defendants' Memorandum in Support of Motions to Dismiss Indictment Because Indictment is

-27-

Unconstitutionally Vague, Overbroad and Ambiguous [Defendants' Memorandum Re: Vagueness/Overbreath] at 12).

The defendants also assert that "not generally known" is unconstitutionally vague. However, the defendants only assert that "based on case law interpreting 'generally known to others in the industry,' none of the information is entitled to trade secret protection." Id. at 17. Similarly, the defendants assert that because the information at issue in this case "does not appear to fall within the ambit of protectable trade secrets as defined by courts in this jurisdiction, the Defendants cannot be held to have been put on notice that their conduct could result in criminal liability." Id. at 22.

With respect to the term "public", the defendants assert that the term must be unconstitutionally vague because the Court of Appeals for the Third Circuit determined that it meant "general public," United States v. Hsu, 155 F.3d 189 (3rd Cir. 1998), whereas the Court of Appeals for the Seventh Circuit in United States v. Lange, 312 F.3d 263 (7th Cir. 2002). determined that it meant "economically relevant" public. Finally, the defendants assert that the alleged trade secrets at issue in this case do not relate to a "product" and, therefore, 18 U.S.C. § 1832 is inapplicable.[3]

The Supreme Court has explained that "[a]s generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357-

---

[3]18 U.S.C. § 1832(a) provides in relevant part: "Whoever, with intent to convert a trade secret, that is *related to or included in a product* that is produced for or placed in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret . . .." (emphasis added).

-28-

58 (1983) (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489 [1982]; Smith v. Goguen, 415 U.S. 566 [1974]; Grayned v. City of Rockford, 408 U.S. 104 [1972]; Papachristou v. City of Jacksonville, 405 U.S. 156 [1972]; Connally v. General Const. Co., 269 U.S. 385 [1926]). A statute is not rendered unconstitutionally vague simply because there is potential uncertainty regarding the precise reach of the statute in hypothetical fact situations. See United States v. Powell, 423 U.S. 87, 93 (1975); see also, Baer v. City of Wauwatosa, 716 F.2d 1117, 1125 (7th Cir. 1983). Rather, in the absence of First Amendment considerations, vagueness challenges must be examined in light of the particular facts of the case before the court. See Powell, 423 U.S. at 92; see also, New York v. Ferber, 458 U.S. 747, 767 (1982).

The defendants maintain, however, that this case involves First Amendment considerations. Whether the First Amendment is implicated or not is also relevant to the question of whether the criminal statute is overbroad. Criminal statutes may only be attacked as overbroad if they restrict interests protected by the First Amendment. United States v. Salerno, 481 U.S. 739, 745 (1987).

The defendants assert that "commercial association," i.e. former employees in a start-up business, is an activity protected under the First Amendment and the due process clause. Specifically, the defendants assert that "[t]he EEA, with its vague terms has the potential to chill entrepreneurs from starting their own small, Midwestern refrigeration company." (Defendants' Memorandum Re: Vagueness/Overbreath at 6). The defendants cite no case law in support of their contention. Moreover, as the government contends, nothing in 18 U.S.C. § 1832 or the charges of the indictment limits the defendants from associating with whomever they please.

-29-

The court agrees with the government's contention. Section 1832 limits illegitimate business competition that is competing with trade secrets stolen from one's competitors.

Thus, the court concludes that the First Amendment is not implicated in this case. Accordingly, the statute is not overbroad and the defendants' vagueness challenge must be examined in light of the particular facts of this case.

The defendants cite no case which has found any aspect of the EEA void for vagueness. In fact, a number of cases have rejected vagueness challenges to the EEA. See United States v. Krumrei, 258 F.3d 535 (6th Cir. 2001); United States v. Yang, 281 F.3d 534 (6th Cir. 2002); United States v. Genovese, 409 F.Supp.2d 253 (S.D. N.Y. 2005); United States v. Shu, 40 F.Supp.2d 623, 627-30 (E.D. Pa. 1999). Moreover, none of the defendants' arguments with respect to their vagueness challenge convince this court to conclude otherwise.

With respect to the term "public," a term is not vague simply because two courts disagree as to what it means in context. Furthermore, as the court of appeals for this circuit explained, the Court of Appeals for the Third Circuit assumed in Hsu, 155 F.3d at 196, "that 'general' belongs in front of 'public,' it did not explain why (nor was this important to, or a part of, Hsu's holding)." Lange, 312 F.3d at 266.

The statute's use of the term "reasonable" also does render it vague. As the government points out, the term reasonable is found in numerous statutes. The defendants assert that DTW did not take "reasonable measures" to keep the information involved secret. Such an assertion, however, is a matter to be addressed at trial, not on a motion to dismiss the indictment. Similarly, the defendants' contentions with respect to the statute's requirements that trade secrets can "not be generally known" or "readily ascertainable through proper means" are matters for trial and do not render the statute unconstitutionally vague.

-30-

Finally, the fact that under § 1832, the trade secret must relate to a "product" does not render it vague. The items allegedly stolen, copied, and possessed by the defendants in this case relate to DTW's business which encompasses the design, installation, and maintenance of commercial refrigeration systems. In light of the foregoing, the court concludes that 18 U.S.C. § 1832 is not unconstitutionally vague as applied.

The defendants also assert that the EEA is fatally ambiguous and, therefore, it must be dismissed pursuant to the "rule of lenity." If the plain language of a statute unambiguously manifests a legislative intention, the court need not pursue it any further. United States v. Podell, 869 F.2d 328, 331 (7th Cir. 1989). If the statutory language is ambiguous, the next step is to examine the statute's legislative history. United States v. Song, 934 F.2d 105, 108 (7th Cir. 1991). If the legislative history does not resolve the question, then the court "must apply the rule of lenity, a rule of statutory construction which dictates that in cases of ambiguity or doubt as to congressional intent, only one offense may be charged." Song, 934 F.2d at 108 (citing Bell v United States, 349 U.S. 81, 83 [1955]).

In this case, the "rule of lenity" is inapplicable because the EEA and its definition of "trade secrets" are not ambiguous. The defendants assert that the previously-discussed phrases of "reasonable measures to keep such information secret" and "not generally known or readily ascertainable by the public" are ambiguous. The defendants, however, make no specific arguments with respect to ambiguity in their briefs. Instead they rely on their previous vagueness arguments. The court has already concluded that the statute is not unconstitutionally vague based on those arguments and those arguments do not persuade the court to conclude that the statute is ambiguous.

-31-

Finally, defendant Anderson asserts that allowing criminal prosecutions under the EEA is unconstitutional because it upsets the proper balance between federal and state authority. The defendant relies on United States v. Bass, 404 U.S. 336, 351 (1971), United States v. Lopez, 514 U.S. 549 (1995), and Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996).

In Lopez, the Court noted there are three broad categories of activity which Congress may regulate under its commerce power. Lopez, 514 U.S. at 558. Under the clause, Congress can regulate: 1) the use of the channels of interstate commerce; 2) the instrumentalities of interstate commerce and persons and things in interstate commerce; and 3) activities having a substantial relation to interstate commerce. Id. at 558-59.

The EEA clearly falls within one of the three categories of activity which Congress may regulate. The EEA requires that the trade secret be related to a product in interstate commerce. Congress has the power to regulate interstate commerce. U.S. Const. Art. 1, §8. Therefore, the EEA does not upset the proper balance between federal and state authority.

In sum, for the reasons stated herein, the EEA and its definition of "trade secrets" is not unconstitutionally vague, overbroad, or ambiguous. In addition, the EEA does not upset the proper balance between federal and state authority. Accordingly, the court will recommend that the defendants' motions to dismiss the indictment because it is constitutionally vague, overbroad, and ambiguous be denied. The court will also recommend that defendant Anderson's motion to dismiss the indictment on constitutional grounds be denied.

-32-

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Summit Refrigeration Group Inc.'s motion to suppress physical evidence.  (Docket #50).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Michael P. Conti's motion to suppress physical evidence. (Docket #51).

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **denying** defendant Frederick P. Anderson's motion to suppress physical evidence.  (Docket #52).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Richard Degroot's motion to suppress physical evidence. (Docket #53).

**IT IS ORDERED** that a recommendation on defendant Summit Refrigeration Group Inc.'s motion to suppress overbroad search warrant and seizures unreasonably exceeding scope of warrant be and hereby is **held in abeyance** pending an evidentiary hearing set for **September 8, 2006, at 10:30 a.m.**.  (Docket #32).

**IT IS FURTHER ORDERED** that a recommendation on defendant Michael P. Conti's motion to suppress overbroad search warrant and seizures unreasonably exceeding scope of warrant be and hereby is **held in abeyance** pending an evidentiary hearing set for **September 8, 2006, at 10:30 a.m.**.  (Docket #28).

**IT IS ALSO ORDERED** that a recommendation on defendant Michael P. Conti's motion to suppress overbroad search warrant and seizures unreasonably exceeding scope of warrant

-33-

be and hereby is **held in abeyance** pending an evidentiary hearing set for **September 8, 2006, at 10:30 a.m.**.  (Docket #33).

IT IS ALSO ORDERED** that a recommendation on defendant Frederick P. Anderson's motion to suppress overbroad search warrant and seizures unreasonably exceeding scope of warrant be and hereby is **held in abeyance** pending an evidentiary hearing set for **September 8, 2006, at 10:30 a.m.**  (Docket #35).

IT IS ALSO ORDERED** that a recommendation on defendant Richard Degroot's motion to suppress overbroad search warrant and seizures unreasonably exceeding scope of warrant be and hereby is **held in abeyance** pending an evidentiary hearing set for **September 8, 2006, at 10:30 a.m.**  (Docket #27).

**IT IS RECOMMENDED** that the United States district judge enter an order **denying** defendant Summit Refrigeration Group Inc.'s motion to dismiss indictment: no trade secrets. (Docket #36).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Michael P. Conti's motion to dismiss indictment: no trade secrets.  (Docket #37).

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **denying** defendant Frederick P. Anderson's motion to dismiss indictment: no trade secrets. (Docket #38).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Richard Degroot's motion to dismiss indictment: no trade secrets.  (Docket #39).

-34-

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **denying** defendant Summit Refrigeration Group Inc.'s motion to dismiss the indictment because it is unconstitutionally vague, overbroad and ambiguous.  (Docket #45).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Michael P. Conti's motion to dismiss the indictment because it is unconstitutionally vague, overbroad and ambiguous.  (Docket #46).

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **denying** defendant Frederick P. Anderson's motion to dismiss the indictment because it is unconstitutionally vague, overbroad and ambiguous.  (Docket #47).

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **denying** defendant Richard Degroot's motion to dismiss the indictment because it is unconstitutionally vague, overbroad and ambiguous.  (Docket #48).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Frederick P. Anderson's motion to dismiss the indictment on constitutional grounds.  (Docket #56).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C), Federal Rule of Criminal Procedure 59(a) and (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures.  Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge

assigned to the case.  Failure to object in accordance with the rules cited herein waives your right to review.

Dated at Milwaukee, Wisconsin this 31st day of August, 2006.

BY THE COURT:

_____ s/ Patricia J. Gorence _____
PATRICIA J. GORENCE
United States Magistrate Judge

Case 2:05-cr-00151-RTR   Filed 08/31/06   Page 36 of 36   Document 79