# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

SUMMIT REFRIGERATION GROUP INC.,                   Case No. 05-Cr-151
MICHAEL P. CONTI,
FREDERICK P. ANDERSON and
RICHARD DEGROOT,

    Defendants.

## **RECOMMENDATION TO THE HONORABLE RUDOLPH T. RANDA**

On June 14, 2005, the defendants were named in a five-count indictment, charging them with various violations of 18 U.S.C. §1832. The charges stem from the defendants' alleged conduct involving documents, computer files and information taken or copied from the individual defendants' former employer, Dual Temp Wisconsin, Inc. (DTW). The indictment also contains forfeiture allegations.

All the defendants moved to suppress all physical items, information and leads resulting from the search of Summit Refrigeration on the grounds that the search warrant was overbroad and items were seized which unreasonably exceeded the scope of the warrant. (Docket ## 27, 28, 32, 33, and 35). On August 31, 2006, the court issued an order holding in abeyance a decision on the defendants' motions to suppress overbroad search warrant and seizures unreasonably exceeding the scope of the warrant pending an evidentiary hearing on limited issues.

Specifically, the court found that the defendants had raised a significant issue with respect to the search warrant. The court stated that, contrary to the government's assertions, "a plain reading of the wording and a review of the punctuation in the paragraph listing the items to be seized shows that the phrase, 'connected to Dual Temp of Wisconsin, Inc.', only modifies the last item, namely 'handbooks or other notations.'" (Court's Recommendations and Orders of August 31, 2006, at 18). Given the limiting phrase, however, the court was not prepared at the time to conclude that this part of the warrant authorized a general search. The court concluded that, in light of the limiting language and the government's position, the officers who conducted the search may have construed the warrant in the same manner as asserted by the government.

Accordingly, the court scheduled an evidentiary hearing to take testimony on how the search for computer-related items was conducted. The government was instructed to present evidence "establishing how the officers executing the search warrant conducted the search, what efforts, if any, the officers made to identify relevant files and information, what items were seized and why they were seized." Id. The government asserted that some items were in plain view and as to those items, if not authorized by the warrant, the evidentiary hearing would address from where the items were obtained and whether the incriminating nature of the items were immediately apparent. The defendants' request for an evidentiary hearing on the issue of the government's "good faith" was denied because they failed to establish grounds for a hearing on this issue.

The evidentiary hearing on these limited issues was held on September 8, 2006. Brookfield Police Department Detective Ronald LaGosh testified at the hearing. Based on the

evidence presented, the court now makes the following findings of fact with respect to the search warrant issued in this case.

A search warrant was obtained for Summit Refrigeration Group, Inc. (Summit) located at N56 W13262 W. Silver Spring Road, Menomonee Falls, Wisconsin, on April 9, 2006. (Exhibit 3). The affiant on the warrant was Detective Ronald LaGosh. The defendants have challenged the following part of the warrant:

> . . . back-up CD's of DualTemp documents; any and all information and or data stored in the form of magnetic or electronic coding on computer media or upon media capable of being read by computer or with the aid of computers; related equipment, including but not limited to floppy disks, fixed hard disks, removable hard disk cartridges, tapes and laser disks, video cassettes and any other media which is capable of storing magnetic coding including data storage in the form of electronic e-mail from Michael P. Conti, Fred P. Anderson, Richard J. DeGroot, or Victoria Scherer; any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic magnetic computer impulses for data, including but not limited to computers, computer components, word processing equipment, modems, monitors, printers, plotters, encryptions, circuit boards, optical scanners, external hard drives and other computer-related electronic devices; and any and all written or printed material, which provides instructions or examples concerning the operation of a computer system; computer software, and/or related devices; handbooks or other notations connected to DualTemp of Wisconsin, Inc.;

Detective LaGosh testified that he has had extensive training on computers and searching computer evidence, including training and experience on various software programs like EnCase and Forensic Toolkit and courses on basic data recover and analysis. He is knowledgeable about various computer software and data retrieval programs. The warrant at issue was prepared by a Waukesha County Assistant District Attorney (ADA), not Detective LaGosh.

Detective LaGosh testified unequivocally that the phrase, "connected to Dual Temp of Wisconsin, Inc.", applied to the whole paragraph setting forth items to be searched and seized.

- 3 -

He explained that this was discussed with the ADA prior to the drafting of the warrant. This was the reason for getting the warrant – to obtain documents and information connected to DualTemp of Wisconsin. Detective LaGosh told this to the judge at the time the warrant was sought.

Federal, state and local law enforcement officers assisted in the search. These officers were instructed that the items and information they were searching for were items and information "connected to Dual Temp of Wisconsin, Inc." They were shown a picture of the DualTemp logo and told to seize documents referencing DualTemp or those with the DualTemp logo. The officers also were shown copies of manuals with the DualTemp logo. Detective LaGosh went over the list of items to be seized with the officers.

Detective LaGosh spoke to Steven Weinstein, CEO of Dual Temp, prior to obtaining the search warrant. Before beginning the search pursuant to the warrant, Detective LaGosh and the other officers involved in the search met with employees of defendant Summit in the company's conference room and explained the scope of the search. The company computers were then shut down and the officers copied the hard drives on the computers at the direction and under the supervision of Detective LaGosh. The data acquired was a mirror image, an exact duplicate, of the data on the company computers.

Much of the data was copied in Summit's offices. However, some computers and servers were not copied at the scene, in part, because the officers could not get the equipment at the scene to work properly. The servers were taken and copied overnight and then returned to Summit. Five computers at workstations that were not being used, also were taken to the police department to be copied. They were returned to the company in two days. No one at Summit objected to the officers taking the computers. Detective LaGosh testified that if they

had stayed and searched the computers at Summit, it could have taken days to complete the task. He also said that Summit would have been unable to conduct business during this time.

Thousands of multi-page documents were obtained as a result of the search. The warrant did not describe how to search computer data. Detective LaGosh had to determine which documents were relevant and to do so he did a "key word" search. He use the following key words to search the data retrieved from Summit's computers: "jpeg, DualTemp, DTW, Rocco Busato, Kathy Loeper, Brian Entman, and Veena." (Exhibit 1). DTW refers to DualTemp of Wisconsin. Mr. Busato, Ms. Loeper, Mr. Entman and Veena are all DualTemp employees. Mr. Busato installs and maintained the computers at DualTemp. The jpeg file is a picture file which was used to identify CAD (computer aided drawings) files and documents that contained the DTW logo. Detective LaGosh selected jpeg from his default keywords, in part, because of the CAD drawings and digital items. The DualTemp logo is a picture item. CADs are regularly used in the refrigeration industry.

Detective LaGosh explained that the Windows Operating System provides a significant amount of information in its metadata, including when a document was created and when it was modified. Metadata or digital data, which cannot be viewed by printing a document, provides information about the type of software used to create the document, the owner of the software and other information. Detective LaGosh testified that using the key word search to search the documents and the metadata, it is then possible to generate a report of the relevant documents.

Documents were obtained from the defendants' offices, file cabinets and other locations. According to Detective LaGosh, DualTemp documents, including CAD drawings and manuals, were found all over the offices and seized pursuant to the warrant. Some

- 5 -

DualTemp documents, such as notepads with the DualTemp logo, were not seized. Some books/manuals with DualTemp documents in them, which were Summit manuals, were turned over to the company's attorney. In conducting the search, if an officer had a question about whether or not an item could be properly seized, he brought the item to Detective LaGosh or a captain and a determination as to whether or not to seize the item was made at the scene.

Removable media, such as CDs, were searched for items related to the case. The contents of the discs have to be viewed because it is impossible to tell what the CD contains from its label. Detective LaGosh conducted a search of these items immediately after the execution of the search warrant.

Exhibit 1000 is an EnCase report generated by Detective LaGosh. In response to questions pointing out, for example, that the first four items on page 10 of Exhibit 1000 indicate that those documents were written, accessed and created after the defendants left DTW, Detective LaGosh explained that the metadata showed that all these documents were DualTemp documents. He further explained that the file creation date on Exhibit 1000 is the date when the document was placed/created on Summit's server.

Mr. Weinstein was present during the search. He was not the final decision-maker on what items were relevant and could be seized under the warrant.

Detective LaGosh acknowledged that he might have opened files not related to the case. However, in such instances, he promptly would close the file and move on. He explained that to determine if a file was related to the case, he had to open the file. There was no way to accurately tell what was in a particular file without opening it.

All items seized were listed on the property inventory sheet. (Exhibit 2). The inventory sheets contain the case name, name of the officer who completed the sheet and the reason

why the particular item was seized and from where. All items seized were turned over the agents of the Federal Bureau of Investigation (FBI).

Prior to executing the search warrant at Summit, Detective LaGosh did a search of DualTemp of Wisconsin's computers using the search terms at the top half of Exhibit 1. The information obtained was useful in conducting the search of Summit's computers.

Based on the evidence presented, the court concludes that Detective LaGosh and the other officers participating in the search did not conduct a general search of the premises. The items obtained were specified in the warrant and some were in plain view. The search of the computers and secondary media was conducted in a manner designed to minimize examination of non-relevant information. Detective LaGosh adequately explained his use of key words to focus the search. His use of a jpeg file to search for documents containing the DualTemp logo and CAD drawings was reasonable and focused on discovering relevant information.

Detective LaGosh explained that he needed to open computer files and secondary media to determine what they contained. After his perusal, if the file or CD did not contain relevant information, he closed the file and moved on. This is akin to searches conducted of hard copy files in a file drawer. An officer executing a certain warrant for certain hard copy documents is permitted to look through files to determine which ones contain documents and information relevant to the items described in the warrant. He or she is not limited to looking only at the file labels. If a quick look at a particular paper file indicates that the information therein is not relevant to the search items, the officer may not continue searching that file. Detective LaGosh used this procedure in conducting the computer and secondary media searches in this case. While acknowledging that he could have opened files unrelated to the

- 7 -

case, he testified that as soon as he determined a file was not relevant, he closed the file and moved on.

In sum, the evidence establishes that the search of Summit's offices was not overly broad and the search warrant as executed was not a general search. The search was sufficiently particularized to focus on documents and other items covered under the warrant. Accordingly, based on the evidence at the hearing, as well as the court's conclusions in its August 31, 2006, recommendation to the court, the court recommends that the defendants' motion to suppress the allegedly overbroad search be denied.

## **CONCLUSION**

**NOW, THEREFORE, IT IS RECOMMENDED** that the United States district judge enter an order **denying** defendant Summit Refrigeration Group Inc.'s motion to suppress overbroad search warrant and seizures unreasonably exceeding scope of warrant. (Docket #32).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Michael P. Conti's motions to suppress overbroad search warrant and seizures unreasonably exceeding scope of warrant. (Docket ## 28, 33).

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **denying** defendant Frederick P. Anderson's motion to suppress overbroad search warrant and seizures unreasonably exceeding scope of warrant. (Docket #35).

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **denying** defendant Richard Degroot's motion to suppress overbroad search warrant and seizures unreasonably exceeding scope of warrant. (Docket #27).

Dated at Milwaukee, Wisconsin, this 11th day of September, 2006.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge